CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
GABRIELA RIVERA (Bar No. 283633)
(E Mail:  gabriela_rivera@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-2854
Facsimile:  (213) 894-0081

Attorneys for Defendant
RANDY PAUL RUIZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RANDY PAUL RUIZ and GEORGINA RAVELERO,<br><br>Defendants. | Case No. 25-cr-680-SVW<br><br>**RANDY PAUL RUIZ'S MOTION TO DISMISS INDICTMENT DUE TO UNCONSTITUTIONAL VAGUENESS; DECLARATION OF COUNSEL**<br><br>Trial Date:<br>December 2, 2025<br><br>Hearing Date:<br>November 24, 2025 |

Randy Paul Ruiz, by and through his counsel of record, Deputy Federal Public Defender Gabriela Rivera, hereby submits this motion to dismiss Count One of the Indictment as unconstitutional. The Indictment charges a violation  of 18 U.S.C. § 231, which prohibits conduct deemed to interfere with law enforcement officers performing duties "incident to or during the commission of a civil disorder." Because this statute is facially invalid, the Court should dismiss the Indictment.

//

This motion is based on the attached memorandum of points and authorities, all files and records in this case, and any further evidence that may be adduced at a hearing on the motion.

Respectfully submitted,

CUAUHTÉMOC ORTEGA
Federal Public Defender

DATED:  October 27, 2025          By   */s/ Gabriela Rivera*

GABRIELA RIVERA
Deputy Federal Public Defender
Attorneys for RANDY PAUL RUIZ

2

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

III. LEGAL STANDARD .........................................................................................1

IV. ARGUMENT .......................................................................................................2

     A.    The Statute's Imprecise Language Improperly Hinders a Person of Ordinary Intelligence from Discerning What Conduct It Prohibits.............3

     B.    Section 231(a)(3)'s Reliance on Subjective Reactions Renders Violations Unpredictable ...................................................................................6

     C.    Section 231(a)(3) Lacks a Scienter Requirement, Which Weighs in Favor of the Law's Unconstitutionality ..........................................................7

     D.    In The Alternative, The Indictment Should Be Dismissed Because Its Language Neither Provides Adequate Notice Nor Assures That The Grand Jury Made The Determinations Required By The Fifth Amendment. ..............................................................................................................8

V. CONCLUSION .....................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Federal Cases**

*City of Chicago v. Morales*,
  527 U.S. 41 (1999).................................................................................................6

*City of Houston v. Hill*,
  482 U.S. 451 (1987).............................................................................................3

*Coates v. City of Cincinnati*,
  402 U.S. 611 (1971).............................................................................................6

*Colautti v. Franklin*,
  439 U.S. 379 (1979).............................................................................................7

*Cole v. Arkansas*,
  333 U.S. 196 (1948).............................................................................................9

*Johnson v. United States*,
  576 U.S. 591 (2015).........................................................................................1, 6

*McCoy v. City of Columbia*,
  929 F. Supp.2d 541 (D.S.C. 2013) .....................................................................7

*Papachristou v. Jacksonville*,
  405 U.S. 156 (1972).......................................................................................2, 3

*Russell v. United States*,
  369 U.S. 749 (1962).......................................................................................1, 9

*Sessions v. Dimaya*,
  138 S. Ct. 1204 (2018).........................................................................................2

*Smith v. O'Grady*,
  312 U.S. 329 (1941).............................................................................................9

*Stirone v. United States*,
  361 U.S. 212 (1960).............................................................................................9

*United States v. Du Bo*,
  186 F.3d 1177 (9th Cir. 1999) ............................................................................9

*United States v. Harriss*,
  347 U.S. 612 (1954).......................................................................................2, 7

<u>**TABLE OF AUTHORITIES**</u>

Page(s)

*United States v. Lanier*,
   520 U.S. 259 (1997)................................................................................2

*United States v. R.L.C.*,
   503 U.S. 291 (1992)................................................................................2

*Vill. Of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982)...........................................................................3, 8

*Virginia v. Hicks*,
   539 U.S. 113 (2003)................................................................................4

*Yates v. United States*,
   574 U.S. 528 (2015)................................................................................2

**Federal Statutes**

18 U.S.C. § 111(a)(1) and (b) .................................................................1

18 U.S.C. § 231(a)(3).....................................................................*passim*

18 U.S.C. § 1512(c)(2)............................................................................1

18 U.S.C. § 1752(a)(1), (2), and (4) .......................................................1

40 U.S.C. § 1504(e)(2)(F).......................................................................1

40 U.S.C. § 5104(e)(2)(D) ......................................................................1

**Other Authorities**

114 Cong. Rec. S1294 (Jan. 29, 1968) ..................................................4

Fed. R. Crim. P. 12(b)..............................................................................1

Fed. R. Crim. P. 7(c)(1) ..................................................................1, 9, 10

Fifth Amendment .............................................................................8, 9, 10

First Amendment ...............................................................................3, 4, 8

Joseph Story, *Commentaries on the Constitution*, § 1779 (1833)............9

Sixth Amendment ..................................................................................8, 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The government has charged Mr. Ruiz with violating of 18 U.S.C. § 231(a)(3), a seldom-invoked section of the criminal code authored by legislators to counter the protections of the Civil Rights Act and to silence civil rights leaders in 1968. That statute broadly prohibits an array of conduct deemed to interfere with law enforcement officers performing duties "incident to or during the commission of a civil disorder." The statute is unconstitutionally vague in violation of the Fifth Amendment's Due Process Clause because it employs imprecise terms in defining the federal crime, providing both inadequate notice of the conduct prohibited and leaving insufficient guidance to avoid arbitrary and discriminatory enforcement. For this reason, the Court should dismiss the Indictment.

## II. LEGAL STANDARD

An Indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). It must provide the defendant sufficient detail to allow him to prepare a defense, to defend against a subsequent prosecution for the same offense, and to ensure that he be prosecuted upon facts presented to the grand jury. *Russell v. United States*, 369 U.S. 749 (1962); *Stirone v. United States*, 361 U.S. 212 (1960)). A criminal defendant "may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(3). Rule 12 provides that a defendant may also move to dismiss the Indictment for "failure to state an offense" and "lack of specificity." Fed. R. Crim. P. 12(b)(3)(B)(iii),(v).

A criminal statute is unconstitutionally vague if it fails to give ordinary people fair notice of the conduct it punishes, or is so standardless that it invites arbitrary enforcement. *Johnson v. United States*, 576 U.S. 591, 595 (2015). "The touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259 (1997). The "void-for-vagueness doctrine" protects against arbitrary or

discriminatory law enforcement. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)).

The rule of lenity applies if the terms of the statute are ambiguous. Once it is determined that a statute is ambiguous, the rule of lenity "requires that the more lenient interpretation prevail." *United States v. R.L.C.*, 503 U.S. 291, 293 (1992). This rule is rooted in "the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should." *Id*. at 305 (quoting *United States v. Bass*, 404 U.S. 348, 336 (1971)). The Courts have "[r]eserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *Id*. (citing *Moskal v. United States*, 498 U.S. 103, 108 (1990)). "Whether a statutory term is unambiguous . . . does not turn solely on dictionary definitions of its component words. Rather, 'the plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole. *Yates v. United States*, 574 U.S. 528, 537 (2015) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

### III. ARGUMENT

Section 231(a)(3) is unconstitutionally vague and overbroad, and fails to provide sufficient notice. A criminal statute is void for vagueness when it (1) "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden," *United States v. Harriss*, 347 U.S. 612, 617 (1954); or (2) "encourages arbitrary and erratic arrests and convictions," *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972). Section 231(a)(3) is subject to especially stringent scrutiny under this test for two reasons. First, it imposes criminal penalties, and "[c]riminal statutes must be scrutinized with particular care" under the vagueness test. *Hill* at 459. Second, it threatens to interfere with First Amendment rights, which means "a more stringent

2

vagueness test should apply." *Vill. Of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982). It is also unconstitutionally overbroad, because it "make[s] unlawful a substantial amount of constitutionally protected conduct" by encompassing protected First Amendment speech. *City of Houston v. Hill*, 482 U.S. 451, 459 (1987).

## A.     The Statute's Imprecise Language Improperly Hinders a Person of Ordinary Intelligence from Discerning What Conduct It Prohibits

Everyday citizens have a right to "be informed as to what the State commands or forbids." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972) (citing *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939). Here, a person of ordinary intelligence must guess at the meaning of Section 231(a)(3) because it is replete with vague and imprecise terms. The statute reads:

> Whoever commits or attempts to commit **any act** to **obstruct, impede, or interfere** with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties **incident to and during the commission of a civil disorder** which in any way or degree **obstructs, delays, or adversely affects** commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

18 U.S.C. §231(a)(3) (emphases added).

To start, the phrase "any act" sweeps too broadly. "Any act" can include anything from protected free speech and expressive conduct to an act of violence. Its application to protected speech and protest activity is direct and obvious—indeed, such speech and conduct are likely to encompass a substantial portion of its enforcement given the frequency with which peaceful protests can and do shade into, or occur alongside, disorderly conduct. The statute's plain language could apply to a bystander who yells at police to stop, someone who takes out their cell phone to record police activity, or someone who makes a lewd gesture to police officers who are trying to quell a disturbance. These numerous speech-focused applications render the statute overbroad. *See Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (the First Amendment

3

bars laws that "punish[ ] a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep,'" and for which no "limiting construction" is available); *Hill*, 482 U.S. 451 (invalidating as overbroad an ordinance that "forbade "in any manner oppos[ing], molest[ing], abus[ing] or interrupt[ing] any policeman in the execution of his duty," which the Court understood to "prohibit[] verbal interruptions of police officers").

Unfortunately, it is no surprise that Section 231(a)(3) penalizes a broad range of expressive conduct, since the Senator who proposed this provision did so expressly to quell the activism of Martin Luther King Jr. and the Civil Rights Movement of the 1960s. Senator Russell B. Long of Louisiana proposed Section 231(a)(3) as either an amendment to or replacement for the Civil Rights Act of 1968, a bill he criticized as an "unnecessary" gesture on behalf of the Johnson Administration "to keep its stock high among Negro militants." 114 Cong. Rec. S1294 (Jan. 29, 1968).[1] Senator Long compared the Civil Rights Movement to "a single diseased cell develop[ing] into a killing cancer," and he argued that one "might trace this ominous development from a so-called civil rights march led by Dr. Martin Luther King in the streets of Brimingham in March 1963." *Id.* Senator Long was particularly incensed over the impact of Dr. King's letters: "From the Brimingham jail, where he landed for his efforts, King wrote an inflammatory letter which gained wide recognition in its pleas for Negroes to disobey those laws they felt to be unjust." *Id.* In light of Dr. King's activism according to Senator Long, the Ku Klux Klan's reactions were at the very least understandable. *Id.* at 1295 ("[T]here is evidence these Ku Klux Klan klaverns actually were organized because of this very thing. These people move forward, encouraging Negroes to demonstrate, to violate the rights of others, and to refuse to obey the laws that they do not like; and persons, finding themselves imposed upon, organize to defend themselves against it.").

---

[1] Senator Long's statement proposing this provision is attached as Exhibit A.

4

Because of his fear that the Civil Rights Movement had brought society to the brink of collapse, Senator Long proposed Section 231(a)(3) (and its surrounding provisions) as part of a bill he termed the Civil Obedience Act. *Id.* at 1296. The purpose of the bill was clear: "If we are going to seek to pass a civil rights bill, it should be a bill that would protect the public from irresponsible rabble rousers, instead of a bill that would protect such persons from the public." *Id.* at 1297. From the start, then, Section 231(a)(3) was aimed directly at expressive conduct.

The statute is also unconstitutionally vague—particularly the phrase "incident to and during the commission of a civil disorder." The statute defines "civil disorder" as "any public disturbance involving acts of violence by assemblages of three or more persons which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. §232(1).  But the statute fails to specify how, or how closely, a defendant's conduct must be connected to a civil disorder. Advocates in similar cases have honed in on the ambiguities raised by the phrase "incident to," and for good reason—that phrase does not clarify (1) whether a defendant must actually have participated in a civil disorder; (2) if so, what degree of participation is required to trigger a violation of the statute; or (3) how physically close the defendant must be.

Lastly, Section 231 remains vague up to its final phrase: "in any way *obstructs, delays, or adversely affects* commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function." It does not specify what types of obstructions, delays, or adverse effects are criminalized. Nor does it explain how material an effect upon commerce must be in order to be criminalized by this statute. The statute's failure to define these key terms creates too much ambiguity to pass constitutional muster.

For all these reasons, Section 231(a)(3)'s language requires courts to undertake an indeterminate, "wide-ranging inquiry" that denies defendants fair notice and

encourages arbitrary enforcement. *Johnson v. United States*, 576 U.S. 591, 597 (2015). Moreover, it provides no clearly articulated nexus between the act and the "civil disorder." And while Section 232(1) provides a definition of "civil disorder," its definition could apply to virtually any tumultuous public gathering involving more than two people. Because the statute invites the same kind of unwieldy judicial assessment struck down in *Johnson*, Section 231(a)(3) similarly should be held invalid.

**B.      Section 231(a)(3)'s Reliance on Subjective Reactions Renders Violations Unpredictable**

Section 231(a)(3) also violates the Due Process Clause's fair notice requirement because—by broadly criminalizing any act that interferes with a fireman or law enforcement officer—it impermissibly requires individuals to predict how others will react to their conduct. In *Coates v. City of Cincinnati*, 402 U.S. 611 (1971), the Supreme Court struck down a statute that criminalized conduct "annoying to persons passing by." *Id*. at 614. The Court reasoned that, while the city was "free to prevent people" from criminalizing certain enumerated conduct, such as "blocking sidewalks" or "littering streets," it could not enforce "an ordinance whose violation may entirely depend on whether or not a policeman is annoyed." *Id*.

Similarly, in *City of Chicago v. Morales*, 527 U.S. 41 (1999), the Supreme Court invalidated a statute that prohibited loitering "with no apparent purpose." *Id*. at 60. The Court observed that it was "difficult to imagine how any citizen of the city of Chicago standing in a public place with a group of people would know if he or she had an 'apparent purpose." *Id*. at 57.

Section 231(a)(3) poses the same problem that rendered the ordinances in *Coates* and *Morales* unconstitutional. It imposes criminal liability whenever the defendant's conduct interferes or impedes with a fireman or police officer performing his official duties. But a gesture, sign, or other act that distracts one officer and causes the officer to feel impeded or interfered with, could have no impact at all on another. *See McCoy*

6

*v. City of Columbia*, 929 F. Supp.2d 541, 554 (D.S.C. 2013) (striking down an ordinance that made it unlawful "for any person to interfere with or molest a police officer," because it provided "no objective standard to guide the police in determining that conduct constitutes unlawful interference").

This goes to the core of the vagueness doctrine. The vagueness doctrine exists to ensure that the law "give[s] a person of ordinary intelligence fair notice that his contemplated conduct is forbidden," so that conscientious citizens can conform their actions with the law. *Harriss*, 347 at 617. Here, however, the line between criminal and lawful conduct is determined not by the nature of that conduct, but by whether someone other than the defendant experiences that conduct as an interference—something completely outside the defendant's control. Due to this lack of predictability and precision, Section 231(a)(3) violates the fair notice requirement.

**C.    Section 231(a)(3) Lacks a Scienter Requirement, Which Weighs in Favor of the Law's Unconstitutionality**

The Court has repeatedly affirmed that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Vill. of Hoffman Ests* at 499. But here, there is no such mitigation, because Section 231(a)(3) contains no scienter requirement, thus creating "a trap for those who act in good faith." *Colautti v. Franklin*, 439 U.S. 379, 395 (1979) (quoting *United States v. Ragen*, 314 U.S. 513, 524 (1942)). This absence weighs in further favor of the statute's unconstitutionality.

Additionally, where, as here, individuals must balance multiple factors, and are subject to strict criminal liability when they balance those factors incorrectly, a statute should be held unconstitutional. *See Colautti*, 439 U.S. at 380-95; *but see United States v. McHugh*, 583 F. Supp. 3d 1, 24-25 (D.D.C. 2022) (holding that the statute does include a scienter requirement); *Dennis*, 2022 WL 17475401 at * 2 (same). In *Colautti*, a Pennsylvania statute required physicians to weigh several variables to determine fetus

7

viability. *Id.* If the physician made the wrong determination after weighing these variables, the statute imposed strict criminal liability. *Id.* at 395. The Court struck down the statute, reasoning that "[t]he perils of strict liability [were] particularly acute . . . because of the uncertainty of the viability determination itself." *Id.*

Here, individuals seeking to exercise their First Amendment rights in political protest must balance several factors to avoid criminal prosecution. They must consider whether they are sufficiently "incident to" a group of two or more people in a situation amounting to a "civil disorder," whether police or firemen are in the vicinity, and whether "any" of their acts could interfere with "any" police officer's duties, as determined by that officer. If the wrong determinations are made, even in good faith, that person is now subject to criminal liability. To the extent that a scienter requirement is read into the statute, this does not cure the fair notice issue. *But see, e.g.*, *McHugh*, at 24-28. Instead, this merely leaves police, prosecutors, and judges to decide after the fact whether the statute requires knowledge (and if so, of what) or specific intent (and if so, to do what).

**D.    In The Alternative, The Indictment Should Be Dismissed Because Its Language Neither Provides Adequate Notice Nor Assures That The Grand Jury Made The Determinations Required By The Fifth Amendment.**

The constitutional rights to presentment to a grand jury and adequate notice of the charges are embedded in the Fifth and Sixth Amendments to the Constitution and in Rule 7(c) of the Federal Rules of Criminal Procedure. In the present case, the government mass produced indictments identical in language with the exception of names and dates of the offense. A review of the cases filed under § 231(a)(3) reveals that none of the changes involve specificity regarding the acts or circumstances other than conclusory allegations.

8

"[R]eal notice of the true nature of the charge" is "the first and most universally recognized requirement of due process." *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). In holding that the notice requirements of the Sixth Amendment apply to the States through the requirement of due process, the Supreme Court stated: "No principle of procedural due process is more clearly established than that notice of the specific charge [is] among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *see* Joseph Story, *Commentaries on the Constitution*, § 1779 (1833) ("[T]he indictment must charge the time, and place, and nature, and circumstances, of the offense, with clearness and certainty; so that the party may have full notice of the charge, and be able to make his defense with all reasonable knowledge and ability.").

The Fifth Amendment's presentment provision also requires that the facts be elucidated sufficiently in the indictment so that the grand jury's finding of probable cause can be ascertained and to foreclose conviction based on any offense not found by the grand jury. *See Stirone v. United States*, 361 U.S. 212, 215-162 (1960) ("[A]fter an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself."). Without specificity of charged conduct and circumstances, the court would be forced to "guess as to what was in the minds of the grand jury at the time they returned the indictment[,]" which would "deprive the defendant of a basic protection that the grand jury was designed to secure," by allowing a defendant to be convicted "on the basis of facts not found by, and perhaps not even presented to, the grand jury that indicted him." *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999) (quoting *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979) (citing *Russell v. United States*, 369 U.S. 749, 770 (1962)).

The indictment in the present case fails to fulfill either the notice or presentment requirements of the Fifth and Sixth Amendments. The indictment evidences no attempt to fulfill the Rule 7(c) requirement of a "plain, concise, and definite written statement

9

of the essential facts constituting the offense charged." The indictment does not include any description of the actual conduct or the specific circumstances involved. Accordingly, the indictment does not demonstrate that the grand jury made the required finding of probable cause, and it provides the defense no notice regarding the conduct charged.

## IV. CONCLUSION

For the foregoing reasons, the indictment should be dismissed.

Respectfully submitted,

CUAUHTÉMOC ORTEGA
Federal Public Defender

DATED:  October 27, 2025          By  /s/ Gabriela Rivera

GABRIELA RIVERA
Deputy Federal Public Defender
Attorneys for RANDY PAUL RUIZ

10