CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
GABRIELA RIVERA (Bar No. 283633)
(E Mail: gabriela_rivera@fd.org)
SHANNON M. COIT (Bar No. 298694)
(E Mail: shannon_coit@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
RANDY PAUL RUIZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:25-cr-00680-SVW |
| Plaintiff, | **RANDY PAUL RUIZ'S OMNIBUS REPLY IN SUPPORT OF MOTIONS TO DISMISS INDICTMENT** |
| v. | |
| RANDY PAUL RUIZ and GEORGINA RAVELERO, | Trial Date: January 6, 2026 |
| Defendants. | Hearing Date: December 1, 2025 |

Randy Paul Ruiz, by and through his counsel of record, Deputy Federal Public Defenders Gabriela Rivera and Shannon Coit, hereby submits this reply in support of his motions to dismiss Count One of the Indictment (Dkts. 47, 48).

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  November 24, 2025        By  */s/ Gabriela Rivera*

GABRIELA RIVERA
SHANNON M. COIT
Deputy Federal Public Defenders
Attorneys for RANDY PAUL RUIZ

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In charging Mr. Ruiz with a federal crime, the government relies on the novel application of an obscure statute to prosecute individual conduct that had no impact on commerce or federal functions. Mr. Ruiz has moved to dismiss the indictment, arguing that Congress both exceeded its Commerce Clause authority and enacted an impermissibly vague statute. Undecided by the Ninth Circuit, these issues remain an open question that this Court is empowered to decide. For the reasons set forth herein, Mr. Ruiz respectfully requests that the Court dismiss the Indictment.

## II. ARGUMENT

### A.    Section 231(a)(3) Exceeds Congress's Commerce Clause Authority

In arguing that Congress did not exceed its Commerce Clause power, the government primarily relies on the Eleventh Circuit's recent decision in *United States v. Pugh*, 90 F.4th 1318 (11th Cir. 2024). (Opp. at 23-24.) However, and as addressed below, the government fails to acknowledge that: (1) The Eleventh Circuit applies a much weaker nexus requirement than the Ninth Circuit, requiring only a "logical" connection between the alleged criminal act and commerce rather than a "substantial" connection; and (2) even applying that more relaxed standard, the Eleventh Circuit still struggled with the decision and found it to be a close call.

The Supreme Court limits the categories of permissible regulation under the Commerce Clause to the (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce;" or (3) "those activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558 (2000).

By contrast with the instant case, *United States v. Dorsey*, 418 F.3d 1038 (9th Cir. 2005) perfectly illustrates the invalidity of Section 231(a)(3), which has had none of the congressional repair work addressed in *Dorsey*. After *Lopez* invalidated the Gun-Free School Zones Act under the Commerce Clause, Congress amended the statute's language to require actual use of the channels of interstate commerce and

made detailed congressional findings establishing bases for federal action. In *Dorsey*, the Ninth Circuit addressed the new language that narrowed the offense to possession of a firearm that has "moved in or that otherwise affects interstate or foreign commerce" 418 F.3d at 1045. This jurisdictional element, the Ninth Circuit recognized, established a "concrete tie to interstate commerce" by requiring, "through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Dorsey*, 418 F.3d at 1046. Section 231(a)(3) has no equivalent requirement. Further, the amended statute reviewed in *Dorsey* included extensive and detailed finding to establish a substantial effect on commerce. There, Congress considered and listed eight express and detailed findings establishing the effects on interstate commerce of guns in schools. 18 U.S.C. § 922(q)(1). The government has come forward with nothing remotely similar to such findings with respect to Section 231(a)(3).

The government provides no basis for finding the kind of federal interest required by the Constitution as a limitation on federal power. *See United States v. Morrison*, 529 U.S. 598, 618n.8 (2000) ("With its careful enumeration of federal powers and explicit statement that all powers not granted to the Federal Government are reserved, the Constitution cannot realistically be interpreted as granting the Federal Government an unlimited license to regulate."). The Commerce Clause's limitation on federal legislative authority, and reservation to the States of general police power, depends on "the distinction between what is truly national and what is truly local." *Id.* at 617-618 (citing *Lopez*, 514 U.S. at 568). A federal statute that criminalizes "any act" that interferes with a state officer, incident to a disturbance involving three or more people, that "in any way or degree" affects commerce, addresses a quintessentially local crime and unconstitutionally provides the federal government state police authority.

Federal laws that regulate "forms of conduct that, even in the aggregate, may not substantially affect commerce" must contain a jurisdictional element so that their "applications . . . do not exceed Congress's authority." *Taylor v. United States*, 136 S. Ct. 2074, 2081 (2016). "[T]he jurisdictional element 'insures, on a case-by-case basis, that a defendant's actions implicate interstate commerce to a constitutionally adequate degree.'" *United States v. Jones*, 231 F.3d 508, 514 (9th Cir. 2000) (quoting *United States v. Polanco*, 93 F.3d 555, 563 (9th Cir. 1996)).

Although the government cites to *United States v. Atcheson*, 94 F.3d 1237 (9th Cir. 1996), that decision actually demonstrates that the jurisdictional elements of Section 231(a)(3) and Hobbs Act robbery contrast sharply. In *Atcheson*, the Ninth Circuit upheld Hobbs Act robbery following the Supreme Court's decision in *Lopez*. The court determined "that *Lopez*'s 'substantially affects' test is not applicable" because "the Hobbs Act is concerned solely with *inter* state, rather than *intra* state, activities." *Atcheson*, 94 F.3d at 1242 (emphasis in original). Rather than requiring a substantial effect "the Hobbs Act speaks to one who 'affects commerce' by robbery or extortion," implying "a *direct* impact on interstate commerce." *Id.* (emphasis added). "In contrast to the Gun-Free School Zones Act, which was aimed at purely local, noneconomic activities, the Hobbs Act is directly aimed at economic activities which 'in any way or degree . . . affects commerce." *Id.* While robbery under the Hobbs Act can only be carried out by "affect[ing] commerce," Section 231(a)(3) contains no requirement that an individual "affect commerce" by interfering with the duties of police officer.

As mentioned above, the government's reliance on the Eleventh Circuit's decision in *Pugh* is misplaced. Not only is the decision not binding on this court, but it is also unhelpful because the Eleventh Circuit applies a much weaker nexus requirement than the Ninth Circuit and, even with that relaxed standard, the Eleventh Circuit struggled with the question. Finding the question "not so easily resolved," the

3

Eleventh Circuit ultimately determined that the criminal act at issue in Section 231(a)(3) is not too removed from any connection to commerce because "the criminal act is *sufficiently* connected to interstate commerce." *Id*. at 1327 (emphasis added).  But the Eleventh Circuit law cited in *Pugh* is in stark contrast to the applicable law in the Ninth Circuit, which requires a *substantial* connection to commerce rather than a *sufficient* or *logical* connection to commerce.[1] Furthermore, the decision in *Pugh* contains no lengthy discussion or analysis, and provides only a conclusory citation to its own circuit's authority--which, as mentioned, is at odds with the standard applicable in the Ninth Circuit. It provides no meaningful analysis or answer to a challenge on the basis that Section 231(a)(3) requires only a connection between civil disorder and interstate commerce, not the prescribed act and interstate commerce. As a result, *Pugh*'s analysis of the jurisdictional element should be given no deference or considered as persuasive authority by this Court.

**B.      Section 231(a)(3) is Unconstitutionally Vague**

By penalizing "any act to obstruct, impede, or interfere," §231(a)(3) reaches the outer limits of verbal and expressive conduct without drawing *any* distinction that could exclude acts undertaken merely to convey a message or symbolic content.  *See Roy v. City of Monroe*, 950 F.3d 245, 252 (5th Cir. 2020) (acknowledging that "[s]tanding alone . . . a prohibition on 'any act [undertaken] in such a manner as to disturb or alarm the public' fails meaningfully to guide the police and thus poses a substantial risk of arbitrary or discriminatory enforcement.") (quoting *Louisiana v. Cox*, 379 U.S. 536, 551-52 (1965)).  The phrase "any act to obstruct, impede, or interfere" can fairly

---

[1] For example, in *United States v. Pappadopoulos*, 64 F.3d 522, 527 (9th Cir. 1995), *abrogated on other grounds as recognized in Harrison v. Ollison*, 519 F.3d 952 (9th Cir. 2008), the Ninth Circuit held that where Congress seeks to regulate a purely intrastate noncommercial activity that has traditionally been subject to exclusive regulation by state or local government, and where the connection of the regulated activity as a whole to interstate commerce is neither readily apparent nor illuminated by express congressional findings, the government must satisfy the jurisdictional requirement by pointing to a "*substantial*" effect on or connection to interstate commerce.

4

include within its plain meaning such diverse acts as pure speech, expressive conduct, minimal jostling or even grievous, violent assaults. Accordingly, it fails to provide faire notice, invites arbitrary enforcement, and as addressed below, threatens constitutionally protected activity.

Section 231(a)(3) provides no textual basis to limit the statute and no reason for the general public know citizens cannot be subjected to arbitrary and discriminatory enforcement. Because the statute does not define its terms, the terms must be read "in accordance with [their] ordinary or natural meaning." *FDIC v. Meyer*, 510 U.S. 471, 476 (1994). The ordinary meaning of the statute's terms are dangerously broad and depend on the reactions of the particular officer.

Ultimately, the government relies on out-of-Circuit cases to contend that the statute's vagueness can be saved by construction. Most critically, *United States v. Mechanic*, 454 F.2d 849 (8th Cir. 1971), has long since been superseded by Supreme Court authority limiting judicial ability to rewrite statutes and requiring certainty to protect against the evils of vagueness articulated after those cases were issued. In *Mechanic*, the Eighth Circuit rejected the defendant's void-for-vagueness argument by determining that, under the law at that time, "defendants may not challenge [criminal statutes] as vague or overly broad if their own conduct may be constitutionally prohibited." *Mechanic*, 454 F.2d at 853. Since *Mechanic* was decided, the Supreme Court has embraced facial vagueness challenges that may not apply to the specific case. *See Johnson*, 576 U.S. at 603 (rejecting the proposition that "a statute is void for vagueness only if it is vague in all its applications."); *Guerrero v. Whitaker*, 908 F.3d 541, 544 (9th Cir. 2018) ("*Johnson* and [*Sessions v. Dimaya*, 138 S. Ct. 1204 (2018)] expressly rejected the notion that a statutory provision survives a facial vagueness challenge merely because some conduct clearly falls within the statute's scope."). The decision in *Mechanic* is also at odds with the Supreme Court's later

5

recognition of a "personal right not to be convicted under a constitutionally invalid law." *Bond v. United States*, 564 U.S. 211, 226 (2011).

Finally, the decision of the *Mechanic* court to append a requirement of "violence" to the acts prohibited under Section 231(a)(3) finds no support in the statutory language and is inconsistent with later Supreme Court directives foreclosing judicial rewriting of a statute's plain terms. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 629 (2018) ("Of course, those are not the words that Congress wrote, and this Court is not free to 'rewrite the statute' to the Government's liking.") (citing *Puerto Rico v. Franklin Cal. Tax–Free Trust*, 136 S. Ct. 1938, 1949 (2016) ("[O]ur constitutional structure does not permit this Court to rewrite the statute that Congress has enacted."); *United States v. Stevens*, 559 U.S. 460, 481 (2010) (same). The government does not appear to even offer such an indefensible interpretation of the statute.

The government also claims that the First Amendment considerations do not apply to Due Process vagueness, citing to *Holder v. Humanitarian Law Project*, 561 U.S. 1, 21 (2010). But where, as here, "a statute's literal scope [reaches] expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1974). Unlike the statute banning "expert advice or assistance" to foreign terrorist organizations upheld in *Humanitarian Law Project*, Congress has *not* taken care to add narrowing definitions to Section 231(a)(3) that increase "the clarity of the statute's terms." 561 at 21. Section 231(a)(3) does *not* rely on "statutory definitions, narrowing context, or settled legal meanings" like the material-support statute but instead depends on "untethered, subjective judgments." *Humanitarian Law Project*, 561 U.S. at 20-21.

The statute leaves people like Mr. Ruiz uncertain regarding criminalized conduct and "would delegate to prosecutors and juries the inherently legislative task of determining what type of . . . activities are so morally reprehensible that they should be

6

punished as crimes." *United States v. Kozminski*, 487 U.S. 931, 949 (1988). By doing so, the statute unconstitutionally invites "arbitrary or discriminatory prosecution and conviction." *Id.*

**C.    The Civil Disorder Statute Violates The First Amendment**

    **1.    Section 231(a)(3) Reaches a Substantial Amount of Constitutionally Protected Actiivty**

The Constitution's speech protections extend to "symbolic conduct that, 'on its face, does not necessarily convey a message.'" *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061 (9th Cir. 2010) (quoting *Cohen v. California*, 403 U.S. 15, 18 (1971)). Thus, the relevant overbreadth inquiry is whether a substantial amount of the activities prohibited under Section 231(a)(3) are "'sufficiently imbued with the elements of communication' to receive First Amendment protection." *Id.* at 1058 (quoting *Spence v. Washington*, 418 U.S. 405, 409 (1974)).

"Expressive conduct is characterized by two requirements: (1) 'an intent to convey a particularized message' and (2) a 'great' 'likelihood . . . that the message would be understood by those who viewed it.'" *Edge v. City of Everett*, 929 F.3d 657, 668 (9th Cir. 2019) (quoting *Texas v. Johnson*, 491 U.S. 387, 404 (1989)). Accordingly, so long as Section 231(a)(3) burdens a substantial amount of activities intended to convey a message to an audience who would understand it, the provision is facially overbroad under the First Amendment.

Section 231(a)(3) criminalizes "any act" that could "interfere with" the "duties" of police and firefighters incident to a civil disorder involving three or more people. The term "interfere" is left undefined, as is "impede" and obstruct," permitting an expansive application to any form of expression that tends to interfere with, that is, to interrupt, a police officer's duties during a civil disorder. It is not restricted by time or place, extending broadly across all venues including traditional public fora. While some of the activities under Section 231(a)(3) can be classified as violent and unprotected,

7

"the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987). Section 231(a)(3) is susceptible to no interpretation that could prevent its application to "a significant amount of verbal criticism and challenge directed at police officers," and the Court should invalidate it on this basis.

The government cites to the *Pugh* decision for its holding regarding First Amendment principles. But, again, that decision is not binding on this Court and in any event it is flawed. The *Pugh* Court held that "[i]t is hard to see how either 'obstruct' or 'impede' apply to speech or expressive conduct, except at the margins." *Pugh*, 90 F.4th at 1330. Reviewing definitions contemporary to the passage of Section 231(a)(3), the Eleventh Circuit found "obstruct" to include a component of physical resistance. *Id.* The *Pugh* Court next found that "impede" could mean "to interfere with the progress of" and "to block"; to obstruct, hinder, check, or delay; or to retard in movement or progress by means of obstacles or hinderances. *Id.* In doing so, it presumed an element of forcible resistance applied to each term. *Id.* That Court further found that while "interfere" would carry a broader meaning, "the canon of *noscitur a sociis* – which counsels that a word is given more precise content by the neighboring words with which it is associated [–]" would restrict the possible applications of the statute to a smaller set of conduct. *Id.* (citing to *United States v. Williams*, 553 U.S. 285, 294 (2008) (cleaned up)).

These limitations come from a strained reading of the statute and provide no assurances that the wide variety of conduct encompassed by "any act" would not be improperly criminalized. While it is true that "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge," it is hard to conceive of behavior, be it purely verbal criticism or physical activity like picketing or some other expressive conduct, which would not be reached by this statute if a law enforcement officer though it worked a

8

hindrance on some law enforcement function during a gathering. The language of the statute gives extreme discretion to law enforcement officers to police gatherings where expression is taking place. The statute sweeps too widely and criminalizes speech. It is unconstitutional.

### 2.   Section 231(a(3) Contains No Written Mens Rea Element

Section 231(a)(3), by its own terms, contains no mens rea element.[2] The government focuses on "any act to obstruct, impede, or interfere"–language that offers no clarity as to the degree of mental culpability the provision requires as a matter of law. The government does not point to any federal felony statute that expresses a mental state requirement with the word "to" alone. This single word lacks specificity to connote the degree of mental knowledge and intent required for conviction.

The fact that Section 231(a)(3)'s text itself requires no culpable mental state is confirmed by comparing its wording with the mental state requirements under §§ 231(a)(1) and (a)(2). A person can be found guilty under § 231(a)(1) for teaching the use of weapons or explosives while "knowing or having reason to know or intending that the same will be unlawfully employed for use in, or in furtherance of, a civil disorder." A conviction under § 231(a)(2) requires that a defendant transports or manufactures firearms or explosives while "knowing or having reason to know or intending that the same will be used unlawfully in furtherance of a civil disorder." "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991) (citing to *Russello v. United States*, 464 U.S.

---

[2] Should this case proceed to trial, Mr. Ruiz reserves the right to seek an instruction requiring that the jury requiring, among other things, that the government prove beyond a reasonable doubt that Mr. Ruiz acted with the intent to obstruct, impede, or interfere.

9

16, 23 (1983)). Congress rejected the mens rea element the government now attempts to incorporate into subsection (3) of § 231(a).

In any event, even the government's claimed mens rea element does not limit the statute's application to speech and expressive conduct. A person can use language, gestures, and other conduct in the hope of impeding police that is protected under the exacting standards of the First Amendment under *Brandenburg v. Ohio*, 395 U.S. 444, 448 (1969).

## III. CONCLUSION

For the foregoing reasons, respectfully requests that the Court dismiss the Indictment.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  November 24, 2025          By  */s/ Gabriela Rivera*

GABRIELA RIVERA
SHANNON COIT
Deputy Federal Public Defender
Attorneys for RANDY PAUL RUIZ

10